UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| LUCINDA D. DUNCAN, )<br>)<br>                Plaintiff, )<br>vs. )<br>)<br>MICHAEL J. ASTRUE, Commissioner )<br> of the Social Security Administration, )<br>)<br>                Defendant. ) | 4:09-cv-069-SEB-WGH |

**Entry Discussing Complaint for Judicial Review**

Lucinda D. Duncan ("Duncan") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed**.

**I. Background**

Duncan applied for DIB on January 20, 2006, alleging an onset date of June 7, 2005. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and a hearing was conducted on October 28, 2008. Duncan was present, accompanied by her attorney. Medical and other records were introduced into evidence. Duncan, a medical expert and a vocational expert testified. The ALJ denied Duncan's application on December 19, 2008. On March 26, 2009, the Appeals Council denied Duncan's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Duncan met the insured status requirements of the Act through December 31, 2009; (2) Duncan had not engaged in substantial gainful activity since June 7, 2005, the alleged onset date; (3) Duncan had "severe" (more than minimal) impairments including cervical and lumbar degenerative disc disease, bilateral degenerative joint disease in both knees, shoulder pain, and residuals of inflammatory arthritis and fibromyalgia; (4) Duncan did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Duncan retained the residual functional capacity ("RFC") to lift and carry up to twenty pounds occasionally and ten pounds frequently, had no restrictions in sitting, and was able to stand/walk in combination for up to two hours total in an eight-hour work day, she could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, she would be precluded from climbing any ladders, ropes or scaffolds, and she should avoid work environments that require any exposure to extremes of heat and cold, wetness, or potential work hazards such as unprotected heights and dangerous moving machinery; (6) Duncan was able to perform her past relevant work as a coil winder; (7) Duncan was born on August 9, 1964 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date; (8) Duncan had at least a high school education and was able to communicate in English; (9) transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Duncan was "not disabled," whether or not she had transferable job skills; and (10) considering Duncan's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform.  With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Duncan had not been under a "disability" as defined in the Act from June 7, 2005, through the date of the ALJ's decision.

## II.  Discussion

### A.  Applicable Law

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work

2

existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id*. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

In this case, the ALJ concluded that although Duncan had severe impairments consisting of cervical and lumbar degenerative disc disease, bilateral degenerative joint disease in both knees, shoulder pain, and residuals of inflammatory arthritis and fibromyalgia, she could perform one of her past relevant jobs and other jobs that existed in the national economy. Duncan argues that the ALJ's decision is not supported by substantial evidence.

Duncan's first argument is that the ALJ failed to find that her combined impairments medically equaled Listing 14.09 (inflammatory arthritis). At step three of the analysis, the ALJ discussed, among other listings, Listing 14.09. (R. at 18). The ALJ discussed the evidence of Duncan's residuals of inflammatory arthritis, including x-rays of the hands and feet and MRIs of the right hand, all of which were essentially normal. *Id.* The ALJ also discussed the lack of joint deformity and Duncan's essentially normal gross and fine motor function in the hands and an essentially normal gait. *Id.* The ALJ further noted that the medical expert, Dr. Boyce, testified that Duncan's residuals of inflammatory arthritis did not meet or medically equal the requirements of Listing 14.09. (R. at 18, citing R. at 516). Substantial evidence supports the ALJ's conclusion that Duncan's combined impairments did not meet or medically equal Listing 14.09. Moreover, Duncan, as the claimant, "has the burden of showing that [her] impairments meet a listing, and [s]he must show that [her] impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Although Duncan suggests that her arthritis coupled with her obesity and fatigue would equal Listing 14.09, she has not pointed to evidence that demonstrates that all of the criteria of that listing were satisfied. Under these circumstances, Duncan has not satisfied her burden of showing that her impairments satisfied Listing 14.09. There was no error at step three of the analysis.

Duncan also argues that the ALJ improperly determined her credibility assessment. Specifically, Duncan contends that the ALJ failed to credit her complaints of pain and fatigue, and that if the ALJ had done so, he would have had to conclude, based on testimony from the vocational expert, that there were no jobs in the national economy that Duncan could perform.

The ALJ acknowledged that Duncan testified that she experienced low back pain, mostly at the very end of her spine. (R. at 20). Duncan testified that the pain was constant, and tended to wax and wane. *Id.* She stated that the pain was severe enough to interfere with her concentration and made it difficult to rise from a seated position, and when it was most severe, she was unable to do anything. *Id.* The ALJ concluded, however, that these allegations were unsupported by the record because documented complaints of low back pain were relatively rare. *Id.* The ALJ noted that an office note from August 2008 stated that Duncan experienced a flare of back pain after she lifted her granddaughter. *Id.* In September 2008, Duncan reported a flare of low back pain, described as sharp and constant, radiating down the back of her left leg. *Id.* Even then, however, Duncan denied any chronic pain. *Id.*

The ALJ acknowledged that Duncan had a history of knee pain, but that after she had surgery on each knee in 2006, medical notes indicated that her right knee was essentially pain-free and there were few post-operative complaints of left knee pain. (R. at 21-22).

The ALJ also discussed Duncan's complaints of hand and foot pain. The ALJ stated that Duncan testified that she had severe joint pain and limited flexibility related to rheumatoid arthritis and fibromyalgia about ten to twelve days out of the month. (R. at 23). The ALJ discussed these complaints, and noted that the medical expert testified that the file did not reflect evidence of rheumatoid arthritis and that the radiological and clinical findings showed no evidence of joint deformity characteristics of that condition. (R. at 23-24). The ALJ noted that x-rays and MRIs of the feet and hands were essentially normal, with no radiographic evidence of rheumatoid arthritis. (R. at 23). The consultative examining physician also found that Duncan displayed good function in fine and gross motor movements, her arms and legs had no signs of joint warmth, redness, swelling or deformity, she could make a fist and she was able to perform tasks of fine fingering. (R. at 24).

The ALJ noted that Duncan's medications helped her symptoms. (R. at 25). Duncan also testified that the large number of medications that she took caused fatigue and she had to lie down and sleep for a couple of hours each afternoon. (R. at 501). The ALJ discussed the fact that Duncan reported medication side effects including sleepiness and dizziness. (R. at 25). The ALJ noted that the medical expert testified that the record contained little evidentiary support for the severe fatigue that Duncan described. *Id.* The ALJ also noted that there was little medical documentation that would corroborate her claim of persisting, substantially-limiting fatigue. *Id.* Indeed, Duncan acknowledges in her brief that the record is not replete with comments on fatigue (noting one complaint in 2005, one in 2006 and one in 2008). The medical expert testified that he "did not see evidence of severe fatigue noted in the record." (R. at 516). It is true, also, that when asked by counsel, the expert testified that the large number of medications taken by Duncan could possibly cause fatigue. (R. at 523).

In determining Duncan's credibility, the ALJ recited the appropriate regulations. (R. at 19, citing 20 C.F.R. § 404.1529, SSR 96-7p, and SSR 96-4p). The ALJ acknowledged Duncan's complaints of pain and fatigue. He discussed Duncan's descriptions of her symptoms, the type, effectiveness, and side effects of medications, treatment she had

received for relief of pain, and other relevant considerations. (R. at 19-26). The ALJ concluded that Duncan's allegations of debilitating symptoms, serious functional limitations, and substantially restricted activities of daily living were not supported by substantial evidence and that her testimony on the issue of total disability was not entirely credible. (R. at 26).

A reviewing court affords a credibility finding "'considerable deference,' and [will] overturn it only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)). The court "will uphold an ALJ's credibility determination if the ALJ gave specific reasons for the finding that are supported by substantial evidence." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). "Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). "[A]lthough an ALJ may not ignore a claimant's subjective reports of pain simply because they are not fully supported by objective medical evidence, discrepancies between objective evidence and self-reports may suggest symptom exaggeration." *Id.* In this case, the ALJ discussed Duncan's reported symptoms and considered the entire record in concluding that her subjective complaints far exceeded the clinical evidence of record and the contemporaneous reports made to medical providers. (R. at 23). The ALJ's reasons were specific and were supported by the record. The ALJ concluded that Duncan did experience pain from her combined impairments which significantly limited her ability to perform strenuous lifting and prolonged standing and walking and certain postural maneuvers, which he accommodated in his RFC assessment. (R. at 26). The ALJ otherwise determined, however, that her moderate symptomatic complaints and modest clinical and laboratory findings did not support a finding of disability. (R. at 25).

Duncan asserts that substantial evidence did not support the ALJ's decision because the vocational expert testified that if Duncan needed to rest for up to two hours in an eight hour day, that would eliminate all jobs in the national economy. (R. at 530). This claim is unavailing, however, because an "ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible." *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). The court does not find that the ALJ's analysis in this case was patently wrong, and therefore, must affirm the ALJ's credibility determination.

As noted, the court's role in this case is not to attempt a *de novo* determination of Duncan's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence. If the ALJ's view of the evidence is supported by substantial evidence, the court must affirm the decision. "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Schmidt,* 496 F.3d at 842 (internal quotation omitted). The court is "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).  The court cannot reweigh the evidence, including the opinions of treating and non-examining physicians.

"An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). In this case, the ALJ sufficiently articulated his assessment of the evidence to enable the court to "trace the path

of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation omitted). Accordingly, because substantial evidence supports the ALJ's evaluation of Duncan's impairments, the ALJ's decision must be affirmed.

### III.  Conclusion

There was no reversible error in the assessment of Duncan's application for DIB. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. Under these circumstances, Duncan is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 06/11/2010

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana